**IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| (1) CRETE CARRIER CORPORATION )<br><br>   Plaintiff and Counterclaim Defendant, )<br><br>v. )<br><br>(1) TAYLOR WALKER, and )<br>(2) ALLEN BURNEY )<br><br>   Defendants and Counterclaim Plaintiffs. ) | Case No. CIV-26-43-DES |

**DEFENDANTS AND COUNTERCLAIM PLAINTIFFS' RESPONSE
IN OPPOSITION TO "PLAINTIFF'S MOTION TO DISMISS DEFENDANTS'
COUNTERCLAIMS" (DOCKET NO. 30)**

**TABLE OF CONTENTS**

**INTRODUCTION**..............................................................................................1

**FACTUAL BACKGROUND** ...........................................................................4

**LEGAL STANDARD** ......................................................................................8

**ARGUMENT & AUTHORITIES** .................................................................9

    I.  WALKER AND BURNEY STATE A CLAIM FOR TORTIOUS
    INTERFERENCE WITH CONTRACT .....................................................9

    II.  WALKER AND BURNEY STATE A CLAIM FOR BREACH
    OF CONTRACT ......................................................................................12

    III.  DEFENDANTS' COUNTERCLAIM FOR INTENTIONAL
    INFLICATION OF EMOTIONAL DISTRESS STATES A
    PLAUSIBLE CLAIM ..............................................................................16

    IV.  DEFENDANTS HAVE PLED A VALID COUNTERCLAIM
    FOR ABUSE OF PROCESS ...................................................................19

    V.  DEFENDANTS HAVE STATED A PLAUSIBLE CLAIM FOR
    RELIEF IN THE FORM OF A DECLARATORY JUDGMENT.............................21

    VI.  DEFENDANTS REQUEST LEAVE TO AMEND ...........................................23

**CONCLUSION** .............................................................................................24

**CERTIFICATE OF SERVICE** ......................................................................26

## TABLE OF AUTHORITIES

**Cases:**

Aljassim v. S.S. S. Star,
  323 F. Supp. 918 (S.D.N.Y. 1971) ...............................................................................9

Bank of Oklahoma, N.A. v. Portis,
  942 P.2d 249 (Okla. 1997) ........................................................................................19

Beacon Const. Co., Inc. v. Matco Elec. Co., Inc.,
  521 F.2d 392 (2d Cir. 1975) ................................................................................21, 23

Block v. Pre-Paid Legal Servs., Inc.,
  CIV-07-1304-F, 2008 WL 723775 (W.D. Okla. Mar. 14, 2008) .................................10

Caffey v. Grand River Dam Police Dep't,
  25-CV-216-RAW-JAR, 2025 WL '2588499 (E.D. Okla. Aug. 12, 2025)
  report and recommendation adopted, Caffey v. Grand River Dam Police Dep't,
  CIV-25-216-RAW-JAR, 2025 WL 2577133 (E.D. Okla. Sept. 5, 2025) ......................23

Cassity v. Pitts,
  839 P.2d 192 (Okla. 1992) ................................................................................. Passim

Chicago, R.I. & P. Ry. Co. v. Burke,
  175 P. 547 (Okla. 1918) .............................................................................................13

Chicago, R.I. & P. Ry. Co. v. Perkins,
  242 P. 535 (Okla. 1925) .............................................................................................13

Computer Publications, Inc. v. Welton,
  49 P.3d 732 (Okla. 2002) ...............................................................................16, 17, 18

Davis v. Higgins,
  217 P. 193 (Okla. 1923) .............................................................................................13

Doyle v. Kelly,
  801 P.2d 717 (Okla. 1990) .........................................................................................10

Duran v. Carris,
  238 F.3d 1268 (10th Cir. 2001) ...................................................................................8

Evans v. Bridgestone-Firestone, Inc.,
  904 P.2d 156 (Okla. Civ. App. 1995) .............................................................1, 2, 3 14

Fed. Deposit Ins. Corp. v. Renda,
    692 F. Supp. 128 (D. Kan. 1988) ........................................................................8

Foman v. Davis,
    371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962).........................................23

Fuqua v. Santa Fe County Sheriff's Office,
    157 F.4th 1288 (10th Cir. 2025)........................................................................9

Greenberg v. Wolfberg,
    890 P.2d 895 (Okla. 1994) .........................................................................19, 20

Kennedy v. Ford Motor Co.,
    80 Fed. Appx. 100, 104 (10th Cir. 2003) ...............................................2, 3, 14

Key v. Exxon Mobil Corp.,
    508 F. Supp. 3d 1072 (E.D. Okla. 2020).........................................................23

McGinnity v. Kirk,
    362 P.3d 186 (Okla. 2015) ...............................................................................19

McKinney v. State of Okl., Dep't of Human Servs., Shawnee OK,
    925 F.2d 363 (10th Cir. 1991)..........................................................................23

Midland Valley R. Co. v. Clark,
    189 P. 184 (Okla. 1920) ...................................................................................13

Partminer Worldwide Inc. v. Siliconexpert Technologies Inc.,
    2010 WL 502718 (D. Colo. 2010) ...................................................................19

Roberts v. Bryant,
    No. 23-CV-430-RAW-DES, 2025 WL 2639407 (E.D. Okla. May 20, 2025)
    report and recommendation adopted, No. CIV-23-430-RAW-DES,
    2025 WL 2636598 (E.D. Okla. Sept. 12, 2025)...................................... Passim

Sherwood Med. Indus., Inc. v. Deknatel, Inc.,
    512 F.2d 724 (8th Cir. 1975)............................................................................21

Sufrin v. Hosier,
    128 F.3d 594 (7th Cir. 1997).............................................................................9

Tuffy's, Inc. v. City of Oklahoma City,
    212 P.3d 1158 (Okla. 2009) .............................................................................11

Tulsa City Lines v. Mains,
    107 F.2d 377 (10th Cir. 1939)....................................................................13, 14

ii

United States v. Land O'Lakes, Inc.,
    CIV-16-170-R, 2017 WL 706346 (W.D. Okla. Feb. 22, 2017)....................................22

Wathor v. Mut. Assur. Adm'rs, Inc.,
    87 P.3d 559 (Okla. 2004), as corrected (Jan. 22, 2004) .................................................10

Whitehorse v. Johnson,
    156 P.3d 41 (Okla. 2007) .................................................................................12, 14, 15

**Statutes:**

28 U.S.C.A. § 2201 ........................................................................................................21

Okla. Stat. tit. 20, § 30.5 ................................................................................................1

**Rules:**

Fed. R. Civ. P. 12........................................................................................1, 8, 12, 24

Fed. R. Civ.P. 15................................................................................................23, 24, 25

Taylor Walker ("Walker") and Allen Burney ("Burney") (collectively: "Defendants"), respond in opposition to Crete Carrier Corporation ("Crete")'s Motion to Dismiss Defendants' Counterclaims (Docket No. 30) (hereinafter: "Motion to Dismiss"). Crete's Motion to Dismiss asks this Court to presume the validity of Crete's claims against Defendants in order to dismiss Walker's and Burney's counterclaims against Crete. For this reason, Crete's Motion to Dismiss fails as a matter of law. In further support, Walker and Burney would show the Court as follows:

**INTRODUCTION**

Crete argues that Defendants' counterclaims are invalid because "Crete has the right to sue for fraudulent inducement of the settlement agreement" (Mot. to Dismiss, p. 1). Crete's motion asks the Court to presume the validity of Crete's claims against Walker and Burney to dismiss Defendants' counterclaims. Crete cites no case law supporting such a presumption on a 12(b)(6) motion. Instead, Crete cites *Evans v. Bridgestone-Firestone, Inc.*, 904 P.2d 156 (Okla. Civ. App. 1995), as allegedly supporting Crete's "right to sue for fraud." It does not.

*Evans*, a decision of Oklahoma's Court of Civil Appeals, cannot as a matter of law be cited as precedent. Okla. Stat. tit. 20, § 30.5 ("No opinion of the Court of Civil Appeals shall be binding or cited as precedent unless it shall have been approved by the majority of the justices of the Supreme Court for publication in the official reporter."). Controlling Oklahoma precedent shows Crete has no right to bring this lawsuit. *See*, *Cassity v. Pitts*, 839 P.2d 192, 194-195 (Okla. 1992).[1]

Even when viewed through the persuasive lens, *Evans* is critically distinguishable from this case. In *Evans*, the alleged fraud in inducing the settlement went to the consideration of the release. *Evans*, 904 P.2d at 158-59. This distinction was expressly recognized by the Tenth Circuit in a case where the court rejected a party's suit for fraudulent inducement of a settlement agreement

---

[1] *Cassity*, 839 P.2d 192 is discussed in detail, *infra*.

1

and rejected plaintiff's attempt to argue, as Crete does here, that *Evans* could support her suit. *Kennedy v. Ford Motor Co.*, 80 Fed. Appx. 100, 104 (10th Cir. 2003). In *Kennedy*, the Tenth Circuit held:

> We also reject Ms. Kennedy's claim the Oklahoma Court of Appeals decision in *Evans v. Bridgestone–Firestone, Inc.,* 904 P.2d 156 (Okla.Ct.App.1995), permits her claims to survive the release. In *Evans,* the intermediate court allowed a plaintiff to avoid a release where evidence suggested the defendant affirmatively misrepresented it installed a rebuilt engine in the plaintiff's car. *Id.* at 158. *Evans* is not helpful to Ms. Kennedy because, in that case: (1) the fraud went to the consideration that induced the release, and ***(2) nothing indicated the plaintiff suspected the fraud at the time she executed the release.*** *Id.* at 158–59. Here, Ford delivered the consideration ($270,000) that induced Ms. Kennedy to sign the release. As already discussed, Ms. Kennedy and her lawyer suspected the alleged fraud when she signed the release.

*Kennedy*, 80 Fed. Appx. at 104.

Walker and Burney promised to release Crete from all claims arising out of the 18-wheeler crash and to dismiss with prejudice their state court action. (Settlement Agreement (Docket No. 30-1), ¶ 1.4). Crete received the full consideration it bargained for when it entered into the binding Settlement Agreement to "compromise" "disputed claims" in order to "avoid litigation and buy their peace" upon receiving Walker's and Burney's Dismissal with Prejudice (Answer (Docket No. 22), ¶27).

As in *Kennedy*, Crete settled with full knowledge that Walker's injuries were disputed. The Settlement Agreement expressly recognizes the injuries as "claimed" and subject to being greater or lesser than alleged. (Settlement Agreement (Docket No. 30-1), ¶ 1.4). Crete's own medical expert had already gone further, opining that Walker's right-sided loss of control and wheelchair use were Ms. Walker feigning injury for secondary gain. (Answer (Docket No. 22), ¶ 16(z)).

The Settlement Agreement also acknowledges that Walker and Burney asserted that they were husband and wife only "under the common law of the State of Oklahoma." (Settlement

Agreement (Docket No. 30-1), Recitals, ¶ C). It states neither the marital status of the Defendants, nor their damages incurred as a result of Crete's egregious tortious conduct to be established or undisputed facts, or representations relied upon by Crete in entering into the agreement. *Id.* To the contrary, the agreement states it is a settlement of "*disputed issues* of law and fact" and the "compromise of a *disputed* claim." (*Id.* at ¶ 1.4) (emphasis added).

> In *Kennedy*, in distinguishing *Evans*, the Tenth Circuit stated:

> Under Oklahoma law, to determine whether a release bars future fraud claims, we must consider (1) what the complaining party and her counsel knew at the time she signed the release, and (2) the language of the release. *See Cassity v. Pitts,* 839 P.2d 192, 194 (Okla.1992). In conducting the first portion of the analysis, we must consider whether Ms. Kennedy and her counsel had "information ... sufficient to show ... knowledge of possible future claims" against Ford. *Id.* at 195 (quotation marks and citation omitted.). The Oklahoma Supreme Court has held, where a party suspected the other party engaged in fraud but had no tangible evidence of the fraud, the suspicion shows knowledge of possible future claims. *Id.*

*Kennedy*, 80 Fed. Appx. at 102–03, (*citing Cassity*, 839 P.2d at 194-95). Because the evidence showed that the plaintiff and her attorney suspected fraud, the settlement agreement and release barred her suit claiming the defendant had fraudulently induced a low settlement. *Id.* The Tenth Circuit correctly observed: "The Oklahoma Supreme Court has flatly rejected the argument a litigant must possess tangible evidence of the suspected fraud." *Kennedy*, 80 Fed. Appx. 103. It mattered not that the plaintiff in *Kennedy* did not have hard proof of the suspected fraud until after she signed the settlement. Here, it is undisputed that Crete "suspected fraud" with respect to Walker's claimed injuries. (*See*, Answer (Docket No. 22), ¶¶ 14-17; and, ¶¶ 24-26). Defendants want to make it perfectly clear that they vehemently deny Crete's fraud allegations. The point is, even if the allegations were true, controlling Oklahoma precedent holds Crete emphatically <u>does not</u> have "the right to sue for fraudulent inducement of the settlement agreement."

3

Hence, the foundation of Crete's Motion to Dismiss: its claim that its supposed "right to sue for fraud" invalidates Walker and Burney's counterclaims, crumbles. In an attempt to shore up this crumbling foundation, Crete erroneously states "Defendants did not contest that Crete has plausible claims for fraud." (Motion to Dismiss, p. 2). Not so. Defendants' Answer asserts multiple Affirmative Defenses (Docket No. 22), that challenge the validity of Crete's claim for fraud and its right to bring this suit. The sole reason Defendants did not strategically seek dismissal of Crete's Complaint is that the Complaint would have been evaluated on its face, its half-truths taken as true, and the Complaint, of course, omits the critical facts showing Crete's knowledge at the time it entered into the Settlement Agreement. As stated in the Joint Status Report (Docket No. 25), however, Defendants expect to file a motion for summary judgment that will show the undisputed fact of Crete's knowledge of the disputed nature of the claims it settled, which bars its present suit.

## FACTUAL BACKGROUND

After years of intense litigation and with trial imminent, Walker, Burney, Crete, and others entered into a Confidential Settlement Agreement and Full Release of All Claims "in good faith in order to provide for certain payments *in full settlement and in full discharge of all claims* arising from the September 14, 2021 motor vehicle collision *which are, or might have been, the subject matter of the lawsuit . . . .*" (Mot. to Dismiss, Declaration of Bennet Rawicki, Exhibit 1, "Confidential Settlement Agreement and Full Release of All Claims," (Docket No. 30-1), ¶ 1.4) (hereinafter "Settlement Agreement")). Before entering into the Settlement Agreement, the orthopedic expert hired by Crete told Crete that Walker's hemiparesis, loss of control, and wheelchair use were "either a conversion[2] reaction or could potentially even be that she is feigning

---

[2] Functional neurologic disorder, often called conversion disorder, is a condition of the nervous system that results in physical symptoms such as the inability to walk, swallow, see, or hear that cannot be explained by neurological disease or other medical condition. Mayo Clinic, *Diseases & Conditions: Functional neurologic disorder/conversion* disorder,

injury to enhance compensation." In complete contravention of both the parties' Settlement Agreement and Crete's expert's medical opinion, Crete commenced the instant action, alleging what its orthopedic expert had told Crete before the Settlement Agreement: Crete was fraudulently induced into entering the Settlement Agreement because Walker was feigning injury for secondary gain. In response to Crete's suit, Walker and Burny filed counterclaims against Crete for breach of, and tortious interference with, the Settlement Agreement, intentional infliction of emotional distress, abuse of process, and other equitable relief.

Defendants cannot fully inform the Court of all the relevant factual background in this brief. Certain highlights, however, need to be shown. By spring 2024, the underlying LeFlore County case arising from a September 14, 2021 crash near Spiro, Oklahoma, involving a Crete 18-wheeler driven by Crete's employee, Philip Dixon ("Dixon"), was approaching a jury trial. (Counterclaim (Docket No. 22), ¶¶5, 6). Crete faced significant exposure to trial risks from the 18-wheeler crash. *Id.* at ¶6. Based on this significant exposure, Walker and Burney's counsel sent a high-exposure policy-limits demand to Crete and its insurers. *Id.* at ¶7. Those settlement demands focused heavily on liability and punitive-risk issues, including Dixon's driving history, repeated log violations, Crete's training and supervision failures, and explosive evidence regarding Dixon's conduct in the truck while driving. *Id.* at ¶7. A January 26, 2024, demand letter asserted that liability was "not in dispute," emphasized Crete's negligent entrustment and failure to properly train and supervise Dixon, and demanded all available policy limits as an unconditional policy-limits settlement demand. *Id.* ¶8. A subsequent demand letter sent approximately two months before the June 3, 2024, jury term increased the pressure, describing the testimony obtained from

---

https://www.mayoclinic.org/diseases-conditions/conversion-disorder/symptoms-causes/syc-20355197 (last visited April 16, 2026). The symptoms vary in severity and may come and go.

Crete witnesses as "absolutely devastating," highlighting Dixon's history of federal log violations, Crete's continued employment of him despite repeated issues, and the potential for significant reputational and verdict risks before a LeFlore County jury. *Id.* at ¶9.

Walker and Burney's counsel's pretrial demands also explicitly highlighted evidence that Dixon took photographs and videos of a mistress in compromising sexual positions while driving Crete's 18-wheeler on Oklahoma's roads and highways, and that Crete's own risk-management personnel had tolerated or failed to prevent this, and other, unsafe conduct. *Id.* at ¶10. Crete recognized the provocative nature of this evidence and requested, by adopting pleadings filed by Dixon, that the LeFlore County judge exclude the following evidence from the jury:

 a. Photographs which depicts bi-sexual or homosexual acts,
 b. Photographs that depict explicit sexual acts and/or nudity,
 c. Photographs depicting Dixon and others engaging in sexual acts;
 d. The fact that Dixon had 600 or more pictures of pornography on his personal GPS at the time of the crash,
 e. The fact that Dixon was watching a slideshow of pornography pictures while traveling down the road on the day of the accident, and
 f. Dixon's hours-of-service violations, such as falsifying his logs 5 out of 7 days in the 6 months leading up to the crash

*Id.* at ¶11.

Crete also knew there was evidence from which a reasonable jury could find the following:

 a. Dixon was written up for transporting unauthorized passengers in the cab of Crete's 18-wheeler,
 b. A member of the public reported Dixon to Crete for having a female in the cab with him,
 c. At the time of crash, Dixon had a female passenger with him,
 d. Crete had authorized Dixon's mistress to be a passenger in its 18-wheeler,
 e. Dixon did not tell the officers and emergency personnel at the scene of her presence in the cab at the time of the collision,
 f. Dixon admitted under oath that he had lied about his female passenger being in the cab at the time of crash,
 g. Crete's own trucking expert had admitted that a passenger performing sexual acts on herself or on the driver while driving would be a dangerous distraction that can cause a driver to blow past multiple warning devices and run a stop sign,
 h. Dixon had three prior accidents and three prior speeding violations,

  i.  There was missing information, calling into question Dixon's required road test with Crete,

  j.  Dixon conceded to "violating" 16 traffic control devices warning him of the stop sign at the intersection where the crash occurred.

*Id.* at ¶12.

In the LeFlore County case, Crete also expressly represented to the LeFlore County court that Crete generally denied the nature and extent of Walker's and Burney's injuries and outright denied that all of Walker's medical expenses were causally related to the accident at issue. *Id.* at ¶14. Crete's attorneys paid Dr. Randall Hendricks "right around $37,000.00" to review Walker's medical records, examine her, and provide opinions on the nature and extent of Walker's injuries. *Id.* at ¶15. After reviewing Walker's medical records and personally examining Walker, Crete's expert physician offered opinions questioning the nature and extent of Walker's injuries, going so far as to opine that "some of her symptoms just do not make sense," and "Ms. Walker's stated requirement for a wheelchair is either a conversion reaction or could potentially even be that she is feigning injury to enhance compensation." *Id.* at ¶16(a)-(z).

Nonetheless, Crete knew the liability evidence against it was explosive and that its exposure in the case was astronomical. Accordingly, even though it had a paid medical expert in its pocket, prepared to testify that Walker might be "feigning injury to enhance compensation," and being represented by two experienced Oklahoma litigation defense firms, Crete chose to settle the case, rather than face a LeFlore County jury. *Id.* at ¶¶18-23.

Against this background and with trial imminent, Crete entered into the Settlement Agreement with Walker and Burney – to buy a dismissal with prejudice of the suit against it, buy its peace, and fully compromise the "disputed claims." *Id.* Walker and Burney then performed their side of the bargain. Relying on Crete's representations in the Settlement Agreement, they filed their Dismissal with Prejudice, permanently waiving their right to pursue further claims

against Crete and the other settling parties. *Id.* at ¶ 27. Only after obtaining that dismissal, the releases, and the benefits of settlement did Crete file this action, asserting fraud-based theories aimed at undoing, avoiding, or clawing back settlement consideration by attacking the same disputed issues of injury and marriage that Crete already knew about before settlement. *Id.* at ¶¶ 39–43, 46–49, 61–64, 75, 82–86.

## LEGAL STANDARD

The standard of review for a motion to dismiss under Fed. R. Civ. P. 12(b)(6) is well established. *Roberts v. Bryant*, No. 23-CV-430-RAW-DES, 2025 WL 2639407, at *1 (E.D. Okla. May 20, 2025), *report and recommendation adopted*, No. CIV-23-430-RAW-DES, 2025 WL 2636598 (E.D. Okla. Sept. 12, 2025). A motion to dismiss "'is a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice.'" *Duran v. Carris*, 238 F.3d 1268, 1270 (10th Cir. 2001) (quoting *Cottrell, Ltd. v. Biotrol Int'l, Inc.,* 191 F.3d 1248, 1251 (10th Cir.1999)). In deciding a motion to dismiss counterclaims, the Court should apply the same standards as are applied to a motion to dismiss a complaint. *See, e.g.*, *Fed. Deposit Ins. Corp. v. Renda*, 692 F. Supp. 128, 133 (D. Kan. 1988). To avoid dismissal under Fed. R. Civ. P. 12(b)(6), the complaint must contain enough factual details "'to state a claim of relief that is plausible on its face.'" *Roberts*, 2025 WL 2639407, at *1 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The standard does not require a plaintiff to plead every fact that may later be developed in discovery or proved at trial. *Id.* It requires only sufficient factual content to give the defendant "'fair notice'" of the theories of recovery asserted against it and "'the ground upon which it rests.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

Applying this standard, the Court does not weigh evidence or decide what the parties ultimately may prove. *Id.* The Court's task when presented with a Rule 12(b)(6) motion is limited to determining whether the complaint itself is legally sufficient to state a claim for relief. *Id.* (citing

8

*Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1991)). In deciding whether the complaint is legally sufficient to state a claim, "'the well-pleaded allegations are to be accepted as true and considered 'in the light most favorable to the nonmoving party.'" *Fuqua v. Santa Fe County Sheriff's Office*, 157 F.4th 1288, 1295 (10th Cir. 2025) (quoting *Johnson v. Smith,* 104 F.4th 153, 167 (10th Cir. 2024)).

## ARGUMENT & AUTHORITIES

### I.   WALKER AND BURNEY STATE A CLAIM FOR TORTIOUS INTERFERENCE WITH CONTRACT

Crete argues Walker and Burney cannot state a claim for tortious interference with contract because Crete is a party to the Settlement Agreement. But this argument ignores Crete's obligation to accept as true the well-pleaded allegations of Walker and Burney's counterclaims. *Fuqua*, 157 F.4th at 1295. Walker and Burney's counterclaim for tortious interference factually alleges:

> Although Crete is a "Releasee" under the Settlement Agreement, the Settlement Agreement expressly contemplates and requires separate contractual payment and assignment arrangements involving other entities, including: (i) "qualified assignments" to third-parties and funding through annuity issuers, and (ii) a separately memorialized settlement with Gwynn Cox and GC Case Management, LLC, contracts **to which Crete is not a party and over which Crete has no contractual right of control.**

(Answer (Docket 22), p. 28, ¶ 30).

Furthermore, the third-party requirement has historically arisen in the circumstances of bilateral contracts. It makes no sense to apply the rule to multilateral contracts, such as the Settlement Agreement in this case. Several courts have recognized this fact:

> Public policy requires that the rights of two contracting parties be protected from tortious interference— exactly that which we find occurred here; **the fact that one may derive rights under the same agreement as two other contracting parties does not excuse interference with their contractual rights.**

*Aljassim v. S.S. S. Star*, 323 F. Supp. 918, 926 (S.D.N.Y. 1971). *See also*, *Sufrin v. Hosier*, 128 F.3d 594, 598 (7th Cir. 1997) ("Telesonics had independent contractual obligations to Hosier and to

Sufrin, and Hosier had no greater right to interfere with the obligation to Sufrin than he would have had if that obligation had been set forth on a separate piece of paper.").

Recognizing this hurdle, Crete then switches gears and argues that *even though* Walker and Burney *actually did* plead interference by Crete with contractual obligations to which Crete is not a party, Crete has not actually interfered – yet – because these other parties supposedly have not breached their obligations under the Settlement Agreement. Again, Crete ignores the standard that requires that these well-pled allegations of the counterclaims must be accepted as true:

> 41. Crete knew or was substantially certain that asserting post-settlement "fraud" and claw-back theories challenging the nature and extent of Walker's injuries *would predictably disrupt performance and finality under the separate settlement and payment contracts referenced in the Settlement Agreement*, including the settlement with Dixon and others.
>
> 42. Crete's conduct constitutes intentional and unjustified interference through improper means because it seeks to relitigate and rebrand as "fraud" issues that were previously known, disputed, evaluated, and settled. *This undermines and disrupts Walker and Burney's contractual rights to full and timely performance and finality under the third-party payment/assignment arrangements and separate settlement contracts referenced above.* As a result, damages include delay-related harm, loss of the benefit of the bargain, and additional attorneys' fees and costs incurred to address the disruption and protect settlement performance.
>
> 43.     Crete's conduct *has thus deprived Walker and Burney of the use and benefits of their settlement funds and the core advantages gained from the settlement*: finality, certainty, and peace. Crete's actions have significantly disrupted the settlement's purpose and effectiveness.

(Answer (Docket) 22, p. 30, ¶¶s 41 and 42, emphasis added). In *Block v. Pre-Paid Legal Servs., Inc.*, CIV-07-1304-F, 2008 WL 723775, at *1 (W.D. Okla. Mar. 14, 2008) the court found similar allegations were sufficient "to state a claim against defendants for intentional interference with business relations or prospective economic advantage that is plausible on its face."

Crete's assertion that Defendants have not plausibly pled that Crete acted tortiously is also wrong. In Oklahoma, every contract has implied duty of good faith and fair dealing. *Doyle v. Kelly,*

10

801 P.2d 717, 718 (Okla. 1990), *Wathor v. Mut. Assur. Adm'rs, Inc.*, 87 P.3d 559, 561, (Okla. 2004), *as corrected* (Jan. 22, 2004). The well-pled factual allegations of Defendants' counterclaims demonstrate Crete did not act in good faith with respect to the Settlement Agreement. Crete obviously entered into the settlement solely to escape the exposure of a trial in LeFlore County with the intention of trying to escape its obligations under the agreement *after* it obtained a dismissal with prejudice. Crete's argument that "if [it] is successful" in this suit, then it will be proven that its interference was not wrongful, ignores Crete's bad faith when entering into the Settlement Agreement in the first instance. While Crete's breach of the duty of good faith and fair dealing, in itself, could not support tort liability, Crete's breach of this duty sufficiently shows its interference with Walker and Burney's contracts with the other parties to the Settlement Agreement was "wrongful." *Tuffy's, Inc. v. City of Oklahoma City*, 212 P.3d 1158, 1165 (Okla. 2009) ("This element [of a claim for tortious interference] clearly requires a showing of bad faith.").

Finally, Crete asserts that Defendants' counterclaim fails to plead damages caused by Crete's tortious interference with contract. *Crete proves this is not true with its own argument.* Crete admits the counterclaims plead that Crete's tortious interference has caused the Defendants "delay related harm, loss of the benefit of the bargain, and additional attorneys' fees and costs." (Crete's Mot. to Dismiss, p. 6, quoting Defendant's Answer (Docket 22), ¶ 42). Defendants are not required at the pleading stage in this case "to plead every fact that may later be developed in discovery or proved at trial." *Roberts*, 2025 WL 2639407, at *1. In order to survive Crete's Motion to Dismiss, Defendants are only required to plead sufficient factual content to give Crete "'fair notice'" of the theories of recovery asserted against it and "'the ground upon which it rests.'" *Id.* Defendants have sufficiently pled facts supporting the damages element of their counterclaim for tortious interference.

11

Simply by having to defend against this suit, Walker and Burney have lost the bargained for benefit in the Settlement Agreement of a "complete compromise" of their disputed claims. In exchange for that benefit, they forever released their rights to sue Crete for its gross negligence and willful misconduct and corresponding trial by jury. Even without the lenient standard applicable to the evaluation of the Defendants' claim on a 12(b)(6) motion, the damages Crete has caused with its tortious interference with the Settlement Agreement are more than plausible – they are self-evident. Crete's disingenuous assertion that it could not cause a cloud over the Defendants' use and enjoyment of the settlement proceeds unless its counterclaims were valid ignores the fact that there is *always* a risk that even baseless claims, such as Crete's, might ultimately succeed, and meritorious defenses might fail. Hence the prudent course demands that Defendants postpone their use and enjoyment of the settlement proceeds during the duration of Crete's baseless lawsuit.

Walker and Burney have fully plead all of the elements of tortious interference with contract. For these reasons, Crete's Motion to Dismiss regarding tortious interference fails.

## II.    WALKER AND BURNEY STATE A CLAIM FOR BREACH OF CONTRACT.

The premise of Crete's argument for dismissal of Walker and Burney's counterclaim for breach of contract is Crete's unsustainable assertion that the law supports Crete's own suit. But, as noted, that premise cannot withstand scrutiny. Crete's argument is mostly rhetoric and virtually devoid of legal authority. The few cases Crete cites provide no support for its argument.

First, Crete cites *Whitehorse v. Johnson*, 156 P.3d 41, 46 (Okla. 2007) for the assertion "contracts are not enforceable if there is fraud." In fact, what the Oklahoma Supreme Court states in *Whitehorse* is: "The ***law and public policy favor settlements and compromises***, entered into fairly and in good faith between competent persons, as a discouragement to litigation ***and such agreements are generally enforced*** absent fraud, duress, undue influence, or mistake." *Id*.

(emphasis added). Therefore, the case actually supports the Defendants' assertion that the Settlement Agreement is enforceable and that Crete's suit is a breach of the agreement. The case could only support Crete if this Court were to assume, contrary to the controlling precedent of *Cassity*, *supra*., the validity of Crete's allegations of fraudulent inducement.

Then Crete cites *Tulsa City Lines v. Mains*, 107 F.2d 377, 380 (10th Cir. 1939) for the partial quote: "[I]t is well settled in Oklahoma that a release of liability may be set aside if its execution was induced or brought about by fraudulent statements[.]" (Crete's Motion to Dismiss, p. 8). Crete's truncation of the sentence in Tenth Circuit's opinion is deceptive and misleading. When read in its entirety, the court's statement was: "[i]t is well settled in Oklahoma that a release of liability may be set aside if its execution was induced or brought about by fraudulent statements or representations ***of the physician of the defendant in respect to the extent of the injuries and the condition of the plaintiff***." *Tulsa City Lines*, 107 F.2d at 380 (emphasis added).

As reflected in the full quote, *Tulsa City Lines* involved a release executed by the injured plaintiff in reliance on representations by a doctor employed by the defendant. The Oklahoma Supreme Court decisions the court cites, *Chicago, R.I. & P. Ry. Co. v. Burke*, 175 P. 547 (Okla. 1918); *Midland Valley R. Co. v. Clark*, 189 P. 184 (Okla. 1920); *Davis v. Higgins*, 217 P. 193 (Okla. 1923); *Chicago, R.I. & P. Ry. Co. v. Perkins*, 242 P. 535 (Okla. 1925), all likewise involved the scenario where a doctor employed by the defendants lied to the plaintiff about the severity of his injuries. This rule has no application to the present suit. There can be no dispute that Crete's own hired expert, Dr. Hendricks, told Crete before settlement, in no uncertain terms, precisely what Crete now claims is fraud in this case: "Many providers documented objective findings that contradicted her reported subjective symptoms and complaints," "MRI findings were not consistent with the patient's current symptoms," Walker "was apparently ambulatory without

13

assistive devices per the discharge summary authored by Christina Marrow," "[r]ecords reflect Ms. Walker's strength and ability to ambulate did return to a normal level over time and she was able to ambulate without any walking aides," and "Ms. Walker's stated requirement for a wheelchair is either a conversion reaction or could potentially even be that she is feigning injury to enhance compensation." (Answer (Docket No. 22), ¶16).

Crete's third case in its proposition II is the previously discussed and distinguished *Evans*, 904 P.2d 156. (Crete's Motion to Dismiss, p. 11). But as shown, the Tenth Circuit expressly rejected the exact same overbroad reading of *Evans* that Crete asks this Court to accept. *Kennedy*, 80 Fed. Appx. at 104. The Tenth Circuit held that a release and settlement of a lawsuit bars a subsequent suit for fraudulent inducement of the agreement where the party bringing the subsequent suit knew, or had reason to know, of the alleged fraud at the time it entered into the settlement agreement, even if it did not have hard proof until after the execution of the agreement. *See also*, the controlling precedent of *Cassity*, 839 P.2d at 194. Crete clearly had knowledge or reason to know, at the time it "bought its peace" by entering into the Settlement Agreement, the very same alleged "fraud" it now asserts to try to undo the agreement. (*See*, Answer, Docket No. 22), p. 19, ¶ 14 – p. 27, ¶ 27).

What the first two cases Crete cites do affirmatively demonstrate is that the law of Oklahoma favors settlement agreements, and encourages, promotes, and sustains the compromise and settlement of disputed claims. *Whitehorse*, 156 P.3d at 46; and, *Tulsa City Lines*, 107 F.2d at 380. In *Whitehorse*, the court also noted with respect to settlement agreements:

> A contract includes not only the promises set forth in express words, ***but all such implied provisions as are indispensable to effectuate the intent of the parties*** and as arise from the language of the contract and the circumstances under which it was made.

*Whitehorse*, 156 P.3d 41, 46 (emphasis added). Application of this rule to the parties' Settlement Agreement in this case compels the rejection of Crete's claim that its present suit is not a breach of the agreement.

As alleged in their counterclaims (Answer (Docket 22), p. 33, ¶ 56 – p. 34, ¶ 60), the Settlement Agreement states:

- It is a "Full Release of All Claims." (Settlement Agreement (Docket No. 30-1), title and opening sentence).
- "This release shall be a fully binding and complete settlement among the Releasors and Releasees and their heirs, assigns and successors." (*Id.* at ¶ 1.3).
- It is a "complete compromise" of "disputed issues of law and fact" and the "compromise of a disputed claim" and it is the Releasees intention to "avoid litigation and buy their peace." (*Id.* at ¶ 1.4).
- "This Agreement contains the entire agreement between the Releasors and the Releasees with regard to the matters set forth herein." (*Id.* at ¶ 9.0).

Crete fully compromised and settled its right to assert any claim that Walker's injuries were not as severe as she claimed, or that Burney did not have a legitimate right to recover for loss of consortium.

Crete's current suit is a breach of the terms of the Settlement Agreement, wherein it promised that the agreement was a "complete compromise" of "disputed claims." To the extent the express language of the Settlement Agreement falls short, if at all, of supporting Defendants' breach of contract counterclaim, *Whitehorse*, 156 P.3d at 46 stands for the proposition that the Court must find implied in the agreement those terms or provisions that "are indispensable to effectuate the intent of the parties" arising not only out of the language of the agreement but also out of the "circumstances under which it was made." Defendants' submit that an agreement that Crete was releasing any claims it might have against the Defendants arising out of the settled "disputed claims" is clearly indispensable to effectuate the intent of the parties under the

15

circumstances in which the Settlement Agreement was made; where the Defendants agreed to dismiss with prejudice, and forever relinquish, their rights to sue Crete for its egregious acts.

Defendants have pled the necessary elements of a plausible claim for breach of contract. Crete's Motion to Dismiss should be denied.

## III.  DEFENDANTS' COUNTERCLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS STATES A PLAUSIBLE CLAIM

Crete's conduct in bringing this lawsuit against parties with whom it had entered into a Settlement Agreement intended to be a complete resolution of disputed claims is not only extreme and outrageous, but also unconscionable. What Crete has done is forum-shopped Walker's and Burney's damages claims, while at the same time getting Walker and Burney to forever relinquish the right to sue Crete for its gross negligence and willful misconduct.

Crete was justifiably terrified of facing a LeFlore County jury with the evidence of its gross negligence and willful misconduct on full display. (Answer (Docket No. 22), ¶¶ 5-13). To avoid that fate, Crete falsely represented[3] to Walker and Burney that it was willing to completely resolve the disputed claims and "buy peace" in order to obtain from them a dismissal with prejudice of the LeFlore County suit. After Crete received Walker's and Burney's dismissal with prejudice, it filed *this* suit in this Court in an effort to try the settled disputed claim of the extent of Walker and Burney's damages. *Id.* at ¶¶27, 46, 49, 62, 82, 85, 86.

Crete, strategically avoiding having a LeFlore County jury hear about how Crete's unfit driver was most likely watching pornography (or possibly even actually participating in sexual activities), seeks to try the issue of Walker and Burney's damages in *this* Court, apparently

_____

[3] That Crete continued to conduct surveillance on Walker after the settlement and dismissal with prejudice demonstrates Crete never intended to keep its promises in the Settlement Agreement if it could find what it deemed to be a way out of the agreement.

16

believing this Court provides it with a more favorable forum. Such conduct should make any reasonable person, and certainly all reasonable lawyers and jurists, cry: "outrageous!" *Computer Publications, Inc. v. Welton*, 49 P.3d 732, 735 (Okla. 2002). (In general, a plaintiff must prove that the recitation of the defendant's conduct would lead the listener to exclaim "Outrageous!").

Crete's reference to the Restatement (Second) of Torts, § 46 commentary stating one cannot be liable for intentional infliction of emotional distress by simply insisting upon his or her "legal rights" is inapposite. Under controlling Oklahoma law, Crete has no legal right to press a suit for fraud in connection with the execution of the Settlement Agreement, where it knew or suspected the very facts it now alleges were fraud. In *Cassity,* 839 P.2d at 194-95, the Oklahoma Supreme Court held on similar facts:

> Cassity candidly admits that Mrs. Cassity and her counsel suspected Otey Johnson before they signed the settlement agreement. This ends the inquiry. While Cassity's cause of action did not arise before the Administrator had tangible evidence that Otey Johnson was the forger, Cassity is still bound by the release because Mrs. Cassity, then the Administrator, and her counsel *suspected* Otey Johnson. This information was sufficient to show Administrator's knowledge "... of possible future claims ...," against Trustees. *Kay Pharmacal Co. v. Dalious Const. Co.,* Id.

*Cassity*, 1992 OK 139, ¶ 11 (emphasis by the court). Here, Crete not only "suspected" that Walker and Burney had not sustained the damages they claimed, but it was also actively disputing that point, and had obtained expert testimony to dispute it before it voluntarily chose to enter into a "complete compromise" of all "disputed issues of law and fact." (Answer (Docket No. 22), ¶16).

Nor do the cases arising out of the privilege accorded statements made in litigation protect Crete from liability for its outrageous conduct that has caused the Defendants severe emotional distress. While the Defendants' pleading refers to the accusations of fraud Crete makes in this lawsuit, the claim, as pled, does not rely solely upon those statements. On the contrary the counterclaim for intentional infliction of emotional distress, (*Id.* at ¶¶ 47-49) of Defendants'

17

Answer (Docket No. 22), describes the entire deceitful, bad faith, scheme by Crete to obtain a dismissal with prejudice and full release from Walker and Burney, with full knowledge at that time that it could dispute the nature and extent of their damages and injuries, and then to sue them for "fraud" in this Court to try to recover the consideration it paid for the dismissal and release by disputing the nature and extent of Walker and Burney's damages – the very disputed claims fully compromised in the Settlement Agreement.

Defendants' counterclaim for intentional infliction of emotional distress contains sufficient factual content to nudge it "across the line from conceivable to plausible" so as to survive Crete's Motion to Dismiss. *Roberts*, 2025 WL 2639407, at *1 (citing *Twombly*, 550 U.S. at 570).

> To recover damages for intentional infliction of emotional distress, a plaintiff must prove: (1) the defendant acted intentionally or recklessly; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's conduct caused the plaintiff emotional distress; and (4) the resulting emotional distress was severe.

*Computer Publications, Inc.,* 49 P.3d at 735. Defendants plead facts in their Intentional Infliction of Emotional Distress counterclaim on each of these elements:

- Crete acted intentionally in choosing to settle the case with knowledge that it could dispute Walker's injury claims, and then in filing this suit to recover the settlement money, after it obtained its dismissal with prejudice (Answer (Docket No. 22), ¶¶ 46-48);
- Crete's conduct in obtaining a compromise and a dismissal with prejudice, and then attempting to unwind the settlement is extreme and outrageous (*Id.* at ¶ 49);
- Walker and Burney have suffered and continue to suffer emotional distress as a result of Crete's bad faith conduct, including humiliation and fear (*Id.* at ¶ 51);
- Walker and Burney suffered from anxiety and depression both before the crash and as a result of the crash, and Crete was aware of this fact yet intentionally engaged in its outrageous conduct, and, as a result, the emotional distress it has caused and is causing Walker and Burney is severe (*Id.* at ¶¶ 51-52).

Crete's Motion to Dismiss should be denied as to Defendants' counterclaim for intentional infliction of emotional distress.

IV.     DEFENDANTS HAVE PLED A VALID COUNTERCLAIM FOR
ABUSE OF PROCESS

As one court has noted, abuse of process is a "frequently misunderstood" legal concept. *Partminer Worldwide Inc. v. Siliconexpert Technologies Inc.*, 2010 WL 502718 (D. Colo. 2010). In arguing that the Defendants' counterclaim for abuse of process does not state a claim, Crete has either misunderstood the claim, or it is hoping this Court will.

Under Oklahoma law, the elements of abuse of process are: "(1) the improper use of the court's process (2) *primarily* for an ulterior or improper purpose (3) with resulting damage to the plaintiff asserting the misuse." *Greenberg v. Wolfberg*, 890 P.2d 895, 905 (Okla. 1994) (footnotes omitted, emphasis by the court). *See, also, McGinnity v. Kirk*, 362 P.3d 186 (Okla. 2015), and, *Bank of Oklahoma, N.A. v. Portis*, 942 P.2d 249, 255 (Okla. 1997). "The quintessence of *abuse of process* is '**not the wrongfulness of the prosecution**, but some extortionate perversion of lawfully initiated process to illegitimate ends.'" *Greenberg*, 890 P.2d at 905 (emphasis original in part and added in part) (*citing Heck v. Humphrey*, 512 U.S. 477, 512, 114 S. Ct. 2364, 2372, 129 L. Ed. 2d 383 (1994)).

"The party who asserts the abuse-of-process claim is *not required* to prove (1) the underlying action was brought *without probable cause* or (2) that he/she prevailed in that proceeding." *Greenberg*, 890 P.2d at 905 (emphasis by the court). Therefore, Crete's repeated (and erroneous) refrain that its suit for fraud is authorized and valid is irrelevant with respect to whether Walker and Burney have stated a valid counterclaim for abuse of process – Walker and Burney are not required to prove Crete's claim has no probable cause (although it has none).

Crete incorrectly argues "[t]he only action Defendants challenge is Crete's filing of this lawsuit." (Motion to Dismiss, p. 14). On the contrary, Defendants' counterclaim for abuse of process challenges Crete's whole scheme of obtaining a dismissal with prejudice from the

19

Defendants of their valid personal injury claims with the false promise that it was a "complete compromise" of "disputed issues of fact and law" – issues Crete knew at the time of the settlement it could dispute – and then filing this baseless lawsuit to try to claw back the settlement proceeds after it no longer faced the exposure of a trial before a LeFlore County jury on damning facts. (*See*, Answer (Docket 22), pp. 38-40, ¶¶ 82-86). "The word *'process',* as used in the tort of 'abuse of process', encompasses the *entire range of procedures incident to the litigation process.*" *Greenberg*, 890 P.2d at 905, n. 47 (emphasis added).

Hence, Defendants have pled the elements of abuse of process:

- **Improper use of the court's process** – obtaining a dismissal with prejudice under false pretenses, forum-shopping the Defendants' damages claim, filing a bad faith lawsuit;
- **Primarily for an improper motive** – to move the trial of the Defendants' damages to what it deemed to be a more favorable forum and to try to claw back the settlement proceeds – the consideration it paid for the dismissal with prejudice; and,
- **Causing damages** – at a minimum, the delay in the Defendants' use and enjoyment of the settlement proceeds (as previously noted, prudence requires this of Walker and Burney even though they know Crete's claims are baseless).

Crete either intentionally misunderstands the Defendants' counterclaim, or is trying to mislead this Court, when it argues that the counterclaim characterizes Crete's lawsuit as "*relying* on pre-settlement investigation and evaluation." (Motion to Dismiss, p. 14). Walker and Burney's counterclaim for abuse of process states Crete abused the legal process by bringing this baseless lawsuit "***despite*** Crete's pre-settlement investigation and evaluation" of the very issues it now is disputing. (Answer (Docket No. 22), p. 38-39, ¶ 82, emphasis added). If Crete *were* "relying" on the pre-settlement investigation and evaluation that it had conducted of Walker and Burney's claimed injuries and damages, it would never have brought this illegitimate lawsuit.

The facts pleaded by the Defendants in their counterclaim state a claim for abuse of process. Accordingly, Crete's Motion to Dismiss the abuse of process counterclaim should be denied.

## V.   DEFENDANTS HAVE STATED A PLAUSIBLE CLAIM FOR RELIEF IN THE FORM OF A DECLARATORY JUDGMENT

Crete's argument for dismissal of the Defendants' counterclaim for a declaratory judgment is the most easily refuted. "In a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C.A. § 2201. "[T]he Declaratory Judgment Act should be liberally construed to accomplish its purpose of providing a speedy and inexpensive method of adjudicating legal disputes without invoking coercive remedies and that it is not to be interpreted in any narrow or technical sense." *Sherwood Med. Indus., Inc. v. Deknatel, Inc.*, 512 F.2d 724, 729 (8th Cir. 1975). The purpose of the Act includes to "settle legal rights and remove uncertainty and insecurity from legal relationships without awaiting a violation of the rights or a disturbance of the relationships." *Beacon Const. Co., Inc. v. Matco Elec. Co., Inc.*, 521 F.2d 392, 397 (2d Cir. 1975) (*quoting Aetna Casualty & Surety Co. v. Quarles*, 92 F.2d 321, 325 (4th Cir. 1937)).

Crete's assertion that there is no actual controversy surrounding the terms of the Settlement Agreement is plainly incorrect. The parties argue for vastly different interpretations of the binding provisions of the Settlement Agreement. Crete's Motion to Dismiss and this Response by the Defendants demonstrates that to be true. Crete's position is actually an argument that there is no controversy regarding the terms of the Settlement Agreement, *so long as the Court accepts Crete's interpretation of the agreement*.

Crete's entire Motion to Dismiss is premised on its attempt to persuade the Court that there is nothing about the terms of the Settlement Agreement that prevents it from bringing this lawsuit.

21

But Defendants dispute that interpretation of the agreement, and, as shown, under controlling precedent, *Cassity*, *supra*., the Settlement Agreement should prevent Crete from bringing this suit because Crete was fully aware at the time it entered into the agreement that it could dispute (and did dispute) the nature and extent of Walker and Burney's damages. It cannot now sue for fraudulent inducement because it believes it has uncovered additional evidence to dispute the settled claim. "Mrs. Cassity and her counsel suspected Otey Johnson before they signed the settlement agreement. . . . While Cassity's cause of action did not arise before the Administrator had tangible evidence . . . Cassity is still bound by the release because . . . [she], and her counsel *suspected* Otey Johnson." *Cassity*, 839 P.2d at 195 (emphasis by the court).

Crete's redundancy argument does not prevail. The redundancy rationale stated in *United States v. Land O'Lakes, Inc.*, No. CIV-16-170-R, 2017 WL 706346, at *11 (W.D. Okla. Feb. 22, 2017)  was that "dismissal is appropriate here where the resolution of the case itself will make Defendants' declaratory action unnecessary." But the resolution of the present suit would not make Defendants' counterclaims for a declaratory judgment unnecessary. Defendants anticipate this case for "fraud" will be resolved with a summary judgment in their favor and against Crete based on *Cassity*, *supra*. However, such a judgment would not prevent Crete from taking future positions, or pursuing relief in the future, that similarly "undermines the basic terms and overall intent of the final settlement and peace." (Answer (Docket No. 22), p. 38, ¶ 77(d)).

Crete has demonstrated its bad faith and its intent, likely held at the time it entered into the settlement, to avoid its contractual obligations under the settlement. A declaratory judgment as to the scope and binding effect of the agreement that would permanently prevent Crete from attempting to unwind the agreement is warranted to settle these parties' legal rights and "remove

uncertainty and insecurity from legal relationships without awaiting a [further] violation of the rights or a disturbance of the relationships." *Beacon Const. Co., Inc.*, 521 F.2d at 397.

## VI.   DEFENDANTS REQUEST LEAVE TO AMEND

Crete cites *Caffey v. Grand River Dam Police Dep't*, No. 25-CV-216-RAW-JAR, 2025 WL '2588499, at *6 (E.D. Okla. Aug. 12, 2025), *report and recommendation adopted, Caffey v. Grand River Dam Police Dep't*, No. CIV-25-216-RAW-JAR, 2025 WL 2577133 (E.D. Okla. Sept. 5, 2025) in support of its assertion that "there appear to be no additional facts that could be pled to make the counterclaims valid" and therefore, this Court should deny the Defendants' leave to amend, should it find the Defendants' counterclaims lacking. (Motion to Dismiss, p. 17). However, *Caffey* was a *sua sponte* dismissal by the court of a *pro se* litigant's suit. In it, the court relied on *McKinney v. State of Okl., Dep't of Human Servs., Shawnee OK*, 925 F.2d 363, 365 (10th Cir. 1991) which was also a *sua sponte* dismissal by the court. In *McKinney*, the Tenth Circuit recognized, however, "the *preferred practice* is to accord a plaintiff notice and an opportunity to amend his complaint before acting upon a motion to dismiss for failure to state a claim . . .." *Id*. (emphasis added).

Indeed, under Fed.R.Civ.P. 15(a)(2), "the court should freely give leave [to amend] when justice so requires." *Key v. Exxon Mobil Corp.*, 508 F. Supp. 3d 1072, 1088 (E.D. Okla. 2020), relied upon by Crete, also notes: "'[I]f it is at all possible that the party against whom the dismissal is directed can correct the defect in the pleading or state a claim for relief, the court should dismiss with leave to amend.'" (*Quoting*, *Brever v. Rockwell Int'l Corp.*, 40 F.3d 1119, 1131 (10th Cir. 1994) (quoting 6 C. Wright & A. Miller, Federal Practice & Procedure § 1483, at 587 (2d ed. 1990)); *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962).

23

Crete presumes too much by assuming its own, partisan evaluation of the Defendants' counterclaims is the equivalent of a federal court's *sua sponte* determination that a pleading fails to state a claim for relief. Additionally, Crete's Motion to Dismiss complains throughout of alleged factual deficiencies in the Defendants' counterclaims, and not simply "legal grounds" for why it asserts the claims should fail. Should this Court determine that any of Defendants' counterclaims are lacking, Defendants respectfully request leave, under Fed.R.Civ.P. 15(a)(2) to amend.

## CONCLUSION

Crete made a choice. Faced with a looming LeFlore County jury, explosive liability evidence, and disputed damages issues it had already investigated through its own paid expert, Crete chose settlement. It chose a "complete compromise" of "disputed issues of law and fact." It chose to "avoid litigation and buy [its] peace." Having secured the benefit of that bargain, a dismissal with prejudice and a full release, Crete cannot now ask this Court to treat that bargain as optional to find Walker and Burney have no recourse for Crete's post-settlement actions.

Crete's Motion to Dismiss asks the Court to do what Rule 12(b)(6) forbids: assume the truth of Crete's fraud theory, ignore the facts Crete knew before settlement, and erase counterclaims that plausibly allege breach, interference, abuse, and emotional harm from Crete's post-settlement reversal. The law favors settlements, not post-settlement ambushes. Walker and Burney have plausibly alleged that Crete knowingly settled disputed claims, accepted the benefits of that settlement, and then filed this action to undo the very compromise it made. That is enough under Oklahoma jurisprudence to support Walker and Burney's counterclaims against Crete.

**WHEREFORE**, Defendants and Counterclaim Plaintiffs Taylor Walker and Allen Burney respectfully request that the Court deny Crete's Motion to Dismiss in its entirety. In the alternative,

if the Court concludes any counterclaim has not been pleaded with sufficient specificity, Defendants respectfully request leave to amend pursuant to Fed. R. Civ. P. 15(a)(2).

Respectively submitted,


s/*Michael Burrage*
Michael Burrage, OBA #1350
Scott B. Hawkins, OBA #21694
**WHITTEN BURRAGE**
512 N. Broadway Avenue, Suite 300
Oklahoma City, OK 73102
(405) 516-7800
mburrage@whittenburragelaw.com
shawkins@whittenburragelaw.com

25

## *Certificate of Service*

I hereby certify that on April 17, 2026, I electronically filed the foregoing document using the Court's Electronic Case Filing System. It is available for viewing and download through the Court's CM/ECF system, and all known participants in the case are registered CM/ECF users. Service will be accomplished via the CM/ECF system.

s/*Michael Burrage*
Michael Burrage, OBA No. 1350